UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

**DENISE BAKER,**
**For herself and on behalf of all**
**similarly situated individuals,**

      **Plaintiff,**

**v.**                                         **CASE NO.: _____**

**NAVIENT SOLUTIONS, LLC,**
**F/K/A NAVIENT SOLUTIONS, INC.,**
**F/K/A SALLIE MAE, INC.**

      **Defendant.**

## CLASS COMPLAINT

COMES NOW Plaintiff, Denise Baker ("Baker" or "Plaintiff"), on behalf of herself and

all similarly situated individuals, and alleges the following claims against Navient Solutions,

LLC, formerly known as Navient Solutions, Inc. and before that as Sallie Mae, Inc. ("Navient"

or "Defendant"):

### I.  INTRODUCTION

1.     This action is brought for violations of the Telephone Consumer Protection Act of

1991, 47 U.S.C. § 227, et seq. ("TCPA" or "the Act"), arising out of telephone calls made by or

on behalf of Defendant to Plaintiff's cell phone number using an automatic telephone dialing

system (hereinafter "Autodialer").  Such calls are commonly referred to as "robocalls."

2.     "Robocalls" are the #1 consumer complaint in America today.

3.     In 2016, there were almost 4,000,000 complaints reported to the Federal

Communications Commission (FCC) and the Federal Trade Commission (FTC) concerning robocalls—3,857,627 to be exact.[1]  The number of robocall complaints in 2016 was up significantly from the two previous years, 2,636,477 in 2015 and 1,949,603 in 2014.[2]  It is important to recognize these merely reflect the number of individuals that complained to these agencies; the number of people that have been victimized by robocalling abuse could be close to 100,000,000 in the last 3 years.

4.      "Senator Hollings, the TCPA's sponsor, described these calls as 'the scourge of modern civilization.  They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone out of the wall.' 137 Cong. Rec. 30, 821 (1991).  Senator Hollings presumably intended to give telephone subscribers another option: telling the autodialers to simply stop calling."  *Osorio v. State Farm Bank, F.S.B.*, 746 F. 3d 1242, 1256 (11th Cir. 2014).  Despite the penalties put in place over 26

---

[1] *National Do Not Call Registry Data Book FY 2016, October 1, 2015 – September 30, 2016*, FEDERAL TRADE COMMISSION (Dec. 2016), https://www.ftc.gov/system/files/ documents/reports/ national-do-not-call-registry-data-book-fiscal-year-2016/ dnc_data_book_fy_2016_post.pdf; *Consumer Complaints Data – Unwanted Calls, FCC – Open Data*, FEDERAL COMMUNICATIONS COMMISSION,  https://opendata.fcc.gov/ Consumer-and-Government-Affairs/Consumer-Complaints-Data-Unwanted-Calls/vakf-fz8e.

[2] *National Do Not Call Registry Data Book FY 2015*, FEDERAL TRADE COMMISSION (Nov. 2015), https://www.ftc.gov/system/files/documents/reports/ national-do-not-call -registry-data-book-fiscal-year-2015/dncdatabookfy2015.pdf; *Consumer Complaints Data – Unwanted Calls, FCC – Open Data*, FEDERAL COMMUNICATIONS COMMISSION, https://opendata.fcc.gov/Consumer-and-Government-Affairs/Consumer-Complaints-Data-Unwanted-Calls/vakf-fz8e; *Fact Sheet: Wheeler Proposal to Protect and Empower Consumers Against Unwanted Robocalls, Texts to Wireless Phones*, FEDERAL COMMUNICATIONS COMMISSION, https://apps.fcc.gov/edocs_public/attachmatch/DOC-333676A1.pdf; *National Do Not Call Registry Data Book FY 2014*, FEDERAL TRADE COMMISSION (Nov. 2014), https://www.ftc.gov/system/files/documents/reports/national-do-not-call-registry-data-book-fiscal-year-2014/dncdatabookfy2014.pdf.

years ago, robocall abuse continues to skyrocket.

5.       Defendant Navient, or persons acting as its agent or calling on its behalf, robocalled Plaintiff in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA"), while servicing or attempting to collect a student loan debt which Defendant knew (i) to be that of Plaintiff's brother and (ii) Plaintiff was no way a Debtor.

6.       Robocalls are very inexpensive to make.  As was noted in a Senate hearing on the subject: "With such a cheap and scalable business model, bad actors can blast literally tens of millions of illegal robocalls over the course of a single day at less than 1 cent per minute." *Stopping Fraudulent Robocall Scams: Can More Be Done?: Hearing Before the Subcomm. on Consumer Prot., Prod. Safety, and Ins. of the S. Comm. on Commerce, Sci., and Transp.*, 113 Cong. 113-117 (2013) (statement of Lois Greisman, Assoc. Director, Division of Marketing Practices, Bureau of Consumer Protection, Federal Trade Commission).

7.       The TCPA was enacted to prevent companies like Defendant from invading American citizens' privacy and prevent illegal robocalls.

8.       Congress enacted the TCPA to prevent real harm. Congress found that "automated or pre-recorded calls are a nuisance and an invasion of privacy, regardless of the type of call" and decided that "banning" such calls made without consent was "the only effective means of protecting telephone consumers from this nuisance and privacy invasion."  Pub. L. No. 102-243, §§ 2(10-13) (Dec. 20, 1991), codified at 47 U.S.C. § 227; *see also Mims v. Arrow Fin. Servs.*, LLC, 565 U.S. 368 (2012) ("The Act bans certain practices invasive of privacy").

9.       According to findings by the FCC - the agency Congress vested with authority to issue regulations implementing the TCPA - such calls are prohibited because, as Congress found,

automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

10.     Under the TCPA and pursuant to the FCC's January 2008 Declaratory Ruling, the burden is on Defendant to demonstrate that Plaintiff and the other members of the class and sub-class which Plaintiff seeks to represent provided prior express consent within the meaning of the Act. *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, CG Docket No. 02-278, Declaratory Ruling, 23 F.C.C. Rcd. 559, 565, para. 10 (2008) ("the 2008 TCPA Declaratory Ruling").

## II.  JURISDICTION AND VENUE

11.     This court has original jurisdiction of this civil action as one arising under the laws of the United States. *See 47 U.S.C. § 227(b)(3), 28 U.S.C. § 1331* and *Mims v. Arrow Fin. Serv., LLC*, 565 U.S. 368 (2012).

12.     Defendant Navient is a Delaware limited liability company having its principal office in this district and division located at 2001 Edmund Halley Drive, Reston, VA 20191. Defendant Navient regularly does business in this district and division, has appointed an agent for service of process within this district, and is subject to this Court's personal jurisdiction with respect to this civil action in the district and division and, as such, "resides" in the district and division.

13.     Venue is proper in this Court under 28 U.S.C. § 1391(b).

## III. PARTIES

14.     Plaintiff Baker is an individual and natural person, who resides in and at all times relevant resided in Nashville, Tennessee.

4

15.     Navient, formerly known as Sallie Mae, Inc., is the largest student loan servicer in the United States.  Navient services the loans of more than 12 million borrowers and more than $300 billion in federal and private student loans.

16.     Navient's principal responsibilities as a servicer include managing borrowers' accounts; processing monthly payments; assisting borrowers to learn about, enroll in, and remain in alternative repayment plans; and communicating directly with borrowers about the repayment of their loans.

17.     When a student loan serviced by Navient goes into default, Navient directly and/or through its agents or persons acting on its behalf engages in collection activities as to the defaulted student loan.

18.     In connection with its servicing and collecting activities, Navient and its agents and persons acting on its behalf make telephone calls to relatives, neighbors, acquaintances and references listed in student loan applications or other documentation seeking contact and location information as to the student loan borrower.

19.     In connection with its servicing and collecting activities, Navient and its agents and persons acting on its behalf use skip trace and similar services to identify and obtain the telephone numbers of relatives, neighbors, and acquaintances of borrowers and call the telephone numbers so obtained seeking contact and location information as to the student loan borrower.

20.     At all times pertinent, Defendant was and is engaged in interstate commerce, and Defendant used and is using instrumentalities of interstate commerce, including telephone lines, satellites, cell phone towers, and the mail, in the course of its activities set forth herein.

## IV.  FACTS AS TO NAMED PLAINTIFF

5

21.     Each of the calls to which this Complaint pertains was made to telephone number XXX-XXX-0503 (hereafter "telephone number 0503" or "Plaintiff's cell phone number" or "her cell phone number").[3]

22.     At all times pertinent, telephone number 0503 is and was assigned to a cellular telephone service.

23.     At all times pertinent, Plaintiff is and was the subscriber to and the primary and customary user of telephone number 0503.  As such, as to each of the calls to which this Complaint pertains, Plaintiff was the "called party" whose prior express consent was required in order for Defendant Navient or its agents or any persons calling on its behalf to call that number using an Autodialer.  *See Breslow v. Wells Fargo Bank, N.A.*, 755 F. 3d 1265 (11th Cir. 2014); *Osorio v. State Farm Bank, F.S.B.*, 746 F. 3d 1242 (11th Cir. 2014).

24.     Each of the calls to which this Complaint pertains was made using an autodialer or automatic telephone dialing system as defined by the TCPA in 47 U.S.C. § 227(a)(1) in that the equipment used by Defendant had the capacity to store or produce telephone numbers to be called, using a random or sequential number generator, and to dial such numbers.

25.     Using its delegated authority, the FCC has interpreted the definition of an Autodialer to include any devices with the capacity of dialing numbers automatically from a preprogrammed list, regardless of whether the numbers are randomly or sequentially generated. *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014, 14092-93, para. 133 (2003) ("2003

---

[3]Plaintiff has redacted all but the last four digits of her cell phone number due to privacy concerns.  Plaintiff will disclose her complete cell phone number to Defendant at the appropriate

TCPA Order").

26.     By using such equipment, Defendant was able to make calls to the wireless telephone numbers of the members of the class and subclass which Plaintiff seeks to represent automatically without human intervention.

27.     With respect to each of the calls answered by Plaintiff, there was a noticeable period of silence after Plaintiff answered the call before a live person joined the call on the calling party's end.

28.     This period of silence is characteristic of calls made using a predictive dialer which has been determined by the FCC to be an autodialer.  *See 2003 TCPA Order*, 18 FCC Rcd at 14092-93, para. 133.  "In attempting to 'predict' the average time it takes for a consumer to answer the phone and when a telemarketer will be free to take the next call, predictive dialers may either 'hang-up' on consumers or keep the consumer on hold until connecting the call to a sales representative, resulting in what has been referred to as 'dead air.'"  *2003 TCPA Order*, 18 FCC Rcd at 14101-02, para. 146.  *See also id*. at n. 502.

29.     Indeed, Defendant Navient has stipulated in at least one other lawsuit that the telephone system used to call the Plaintiff was in fact an autodialer.  *See McCaskill v Navient Solutions, Inc.*, Case No. 8:15-cv-1559-T-33TBM (M.D. Fla), Dkt. 107 at 11; *See also Johnson v Navient Solutions, Inc.*, Case No. 1:15-cv-0716-LJM-MJD (S.D. Ind.), Dkt. 177 (granting final approval of $ 17.5 million TCPA class action settlement).

30.     At some time prior to November 7, 2016, Plaintiff's brother took out one or more student loans.

---

time.

31.     Plaintiff was not a co-signer or otherwise obligated on any of the student loans of her brother.

32.     Prior to November 7, 2016, Defendant Navient began servicing one or more of the student loans of Plaintiff's brother

33.     On or about November 7, 2016, Defendant Navient, or some other person acting as its agent or on its behalf, made a call to Plaintiff seeking contact or location information on her brother.

34.     The November 7, 2016, call was made from 765-637-0783 to Plaintiff's cell phone number.

35.     Telephone number 765-637-0783 is registered to Defendant Navient.

36.     Plaintiff answered the November 7, 2016, call.  The caller requested that Plaintiff provide the caller with contact or location information on her brother.

37.     During the November 7, 2016, telephone call, Plaintiff instructed the caller not to call her again.

38.     On or about June 15, 2017, Defendant Navient, or some other person acting as its agent or on its behalf, made another call to Plaintiff seeking contact or location information on her brother.

39.     The June 15, 2017, call was made from 317-550-5609 to Plaintiff's cell phone number.

40.     Telephone number 317-550-5609 is registered to Defendant Navient.

41.     Plaintiff answered the June 15, 2017, call.  The caller requested that Plaintiff provide the caller with contact or location information on her brother.

42.     During the June 15, 2017, telephone call, Plaintiff again instructed the caller not to call her again.

43.     On or about July 17, 2017, Defendant Navient, or some other person acting as its agent or on its behalf, made yet another call to Plaintiff seeking contact or location information on her brother.

44.     The July 17, 2017, call was made from 570-904-8757 to Plaintiff's cell phone number.

45.     Telephone number 570-904-8757 is registered to Defendant Navient.

46.     Plaintiff answered the July 17, 2017, call.  The caller requested that Plaintiff provide the caller with contact or location information on her brother.

47.     During the July 17, 2017, telephone call, Plaintiff again instructed the caller not to call her any more.

48.     Each of the calls made by or on behalf of Navient to Plaintiff's cell phone number was made using an Autodialer.

49.     Based upon the area codes of Defendant's telephone numbers (765, 317 and 570), all of the calls from Defendant, or persons calling as its agent or on its behalf, to Plaintiff's cell phone number were made from within the United States.

50.     All of the calls made by Defendant, or by persons calling as its agent or on its behalf, were received by Plaintiff within the United States.

51.     None of the calls made by Defendant to Plaintiff's cell phone number were made for an emergency purpose.

52.     None of the calls made by Defendant to Plaintiff's cell phone number were made

with Plaintiff's prior express consent.

53.     Plaintiff never provided her cell phone number to Defendant Navient or to any person who called Plaintiff's cell phone number as Navient's agent or on its behalf.

54.     Plaintiff's brother, about whom the callers were seeking information, was never the subscriber of or the primary or customary user of Plaintiff's cell phone number.

55.     Plaintiff never authorized her brother to provide Defendant Navient or anyone acting as its agent or on its behalf with consent to call her cell phone number using an Autodialer.

56.     Plaintiff never authorized her brother to provide her cell phone number to any originator or owner of any of his student loans or to Defendant Navient or to anyone acting as its agent or on its behalf.

57.     On information and belief, if Plaintiff's brother did provide Plaintiff's cell phone number to any originator or owner or to Navient or to any person acting as its agent or on its behalf, it was only provided in connection with his providing Plaintiff's name as a reference.

58.     On information and belief, Defendant Navient or some other person acting as its agent or on its behalf found Plaintiff's name and/or cell phone number as a reference in one of her brother's student loan applications or documentation or using a skip trace service.

59.     In any event, as previously stated, Plaintiff expressly instructed the calling party not to call her again in the calls of November 7, 2016, June 15, 2017 and July 17, 2017, thereby informing Defendant Navient that it did not have any consent to call Plaintiff on her cell phone, regardless of any prior mistaken belief to the contrary.

60.     The November 7, 2016, June 15, 2017, and July 17, 2017 calls were each made to

obtain location and/or contact information on Plaintiff's brother

61.    The November 7, 2016, June 15, 2017, and July 17, 2017 calls were each made solely to obtain location and/or contact information on Plaintiff's brother.

62.    None of the November 7, 2016, June 15, 2017, or July 17, 2017 calls was made solely to collect a debt owed to or guaranteed by the United States.

63.    None of the calls made by or on behalf of Defendant to the cell phone numbers of the class and subclass members who Plaintiff seeks to represent was made solely to collect a debt owed to or guaranteed by the United States.

64.    The prohibition of 47 U.S.C. § 227(b)(1)(A)(iii) was "clearly established" when Defendant, its agents or persons acting on its behalf made the November 7, 2016, June 15, 2017, and July 17, 2017 calls to the cell phone number of Plaintiff and when Defendant, its agents or persons acting on its behalf made the calls to the cell phone numbers of the class and subclass members who Plaintiff seeks to represent.

65.    On information and belief, neither the United States nor any of its departments or agencies or subdivisions (hereafter collectively "the United States") instructed Defendant to violate or to ignore § 227(b)(1)(A)(iii).

66.    Assuming that Defendant was acting as a contractor of the United States in making any or all of the calls to the cell phone numbers of Plaintiff and the class and subclass members who Plaintiff seeks to represent, Defendant was not acting on the instructions of the United States in violating and ignoring the prohibitions of § 227(b)(1)(A)(iii).

67.    On information and belief, any contract between Defendant and the United States that governed the calls made by or on behalf of Defendant to the cell phones numbers of Plaintiff

and the class and subclass members who Plaintiff seeks to represent required that Defendant comply with all applicable federal law and with the Telephone Consumer Protection Act in particular.

68.     Assuming that Defendant was acting as a contractor of the United States, in making any or all of the calls to the cell phone numbers of Plaintiff and the class and subclass members who Plaintiff seeks to represent, Defendant was acting contrary to and in violation of the instructions of the United States in violating and ignoring the prohibitions of § 227(b)(1)(A)(iii).

69.     Defendant Navient, or its agents or persons acting on its behalf, continued to call Plaintiff at least twice after she instructed the first caller to stop calling.

70.      Defendant Navient, or its agents or persons calling on its behalf, recorded at least one conversation with Plaintiff.

71.     Defendant Navient, or its agents or persons calling on its behalf, recorded at least two conversations with Plaintiff.

72.     Defendant Navient, or its agents or persons calling on its behalf, recorded at least three conversations with Plaintiff.

73.     Defendant has been sued in federal court where the allegations include calling an individual using an Autodialer after the individual asked for the calls to stop.

74.     By effectuating these unlawful phone calls, Defendant has caused Plaintiff the very harm that Congress sought to prevent - namely, a "nuisance and invasion of privacy."

75.     Defendant's aggravating and annoying phone calls trespassed upon and interfered with Plaintiff's rights and interests in her cellular telephone and cellular telephone line, by

intruding upon Plaintiff's seclusion.

76.    Defendant's phone calls harmed Plaintiff by wasting her time.

77.    Defendant's phone calls harmed Plaintiff through general wear and tear and by depleting the battery life on her cellular telephone.  They also deprived Plaintiff of the opportunity to make or receive other phone calls using her cell phone while answering and responding to Defendant's phone calls.

78.    Defendant's corporate policy and procedures are structured as to continue to call individuals like the Plaintiff, despite these individuals revoking any consent the Defendant may have mistakenly believed it had.

79.    Defendant's corporate policy and procedures provided no means for Plaintiff to have her cell phone number removed from the call list.

80.    Defendant has a corporate policy of using an Autodialer or a prerecorded or artificial voice message to call persons listed as references, relatives, neighbors, acquaintances or otherwise on student loan applications to obtain contact or location information on borrowers for its financial benefit.

81.    Defendant has a corporate policy of using an Autodialer or a prerecorded or artificial voice message to call relatives, acquaintances and neighbors of student loan borrowers found through skip-trace searches to obtain contact or location information on borrowers for its financial benefit.

82.    Defendant Navient has numerous other federal lawsuits pending against it alleging similar violations as stated in this complaint.  The Defendant has been sued civilly in

federal court 655 times since December 2014.  See list from PACER Case Locator Service attached hereto as Exhibit "A."

83.     In the last 3 years, the Defendant has had 1,877 complaints reported to the Better Business Bureau (BBB), of which 1,327 of those complaints are classified as being related to "Billing/Collection Issues."[4]

84.     Since 2014, the Defendant has had 14,930 complaints reported to the Consumer Financial Protection Bureau ("CFPB"), of which 501 are classified as being related to "Communication Tactics."[5]

85.     On January 18, 2017, the CFPB filed suit against Navient and its wholly-owned debt collector subsidiary, Pioneer Credit Recovery Inc., for their unlawful acts and practices in connection with Defendant's servicing and collection of student loans.  *Consumer Financial Protection Bureau v. Navient Corporation; Navient Solutions, Inc.; and Pioneer Credit Recovery, Inc.*, Case No. 3:17-cv-00101-RDM (M.D. Pa. 2017).

86.     Defendant violated the TCPA with respect to the Plaintiff and the class and subclass that she seeks to represent.

87.     Defendant willfully or knowingly violated the TCPA with respect to the Plaintiff and the class and subclass that she seeks to represent.

---

[4]Navient, Reviews & Complaints, BETTER BUSINESS BUREAU, https://www.bbb.org/ delaware/business-reviews/loans/navient-in-wilmington-de-92002017/reviews-and-complaints (last viewed Aug. 24, 2017).

[5]Consumer Complaints, CONSUMER FINANCIAL PROTECTION BUREAU, https://data.consumerfinance.gov/dataset/Consumer-Complaints/s6ew-h6mp.

## V.  CLAIM FOR RELIEF

### COUNT ONE

### Telephone Consumer Protection Act, 47 U.S.C. §§ 227(b)(1)(A)(iii) and 227(b)(3)

### Automatic Telephone Dialing System

88.     Plaintiff realleges and incorporates paragraphs 1 through 87 as though fully set forth herein.

89.     The "Autodialed Class."  Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this action for herself and on behalf of a class ("the Autodialed Class") of similarly situated individuals initially defined as follows:

> Each person or entity throughout the United States: (a) to whom Navient Solutions, LLC or any person acting as its agent or on its behalf (hereafter "Navient") made one or more telephone calls; (b) to a telephone number assigned to a cellular telephone service; (c) by using an Autodialer; (d) without the called party's prior express consent; (e) after Navient designated the telephone number to which it made the call(s) as that of someone who was related to or acquainted with or a neighbor of the Debtor whom Navient was seeking and not the actual Debtor himself/herself; (f) within four years preceding the filing of the Complaint in this matter or during its pendency.  Excluded from the class definition are (1) all persons or entities included within that class defined in the Final Approval Order (Dkt. # 177) in *Johnson v Navient Solutions, Inc.*, Case No.: 1:15-cv-0716 (S.D. Ind.); (2) any employees, officers, directors of Defendant, and any attorneys appearing in this case, and any judge assigned to hear this action.

90.     The "Autodialed Sub-Class."  Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff also brings this action for herself and on behalf of another putative sub-class ("the First Autodialed Sub-Class") of similarly situated individuals initially defined as follows:

> Each person or entity throughout the United States: (a) to whom Navient Solutions, LLC or any person acting as its agent or on its behalf (hereafter "Navient") made one or more telephone calls; (b) to a telephone number assigned to a cellular telephone service; (c) by using an Autodialer; (d) without the called party's prior express consent;  (e) after Navient designated the telephone number to which it made the call(s) as that of someone who was related to or acquainted with or a neighbor of the Debtor whom Navient was seeking and not the actual Debtor himself/herself; (f) within four

years preceding the filing of the Complaint in this matter or during its pendency, (g) where Defendant or any person acting as its agent or on its behalf continued to call such person's cell phone number using an Autodialer after being instructed to stop calling. Excluded from the class definition are (1) all persons or entities included within that class defined in the Final Approval Order (Dkt. # 177) in Johnson v Navient Solutions, Inc., Case No.: 1:15-cv-0716 (S.D. Ind.); (2) any employees, officers, directors of Defendant, and any attorneys appearing in this case, and any judge assigned to hear this action.

91.     Numerosity. *Fed. R. Civ. P. 23(a)(1)*.  Upon information and belief, Plaintiff alleges that the members of the Autodialed Class and of the Autodialed Sub-Class (herein referred to as the "Class" and "Sub-Class") are so numerous that joinder of all is impractical. The names and addresses of the Class and Sub-Class members are identifiable through documents maintained by Defendant, and the Class and Sub-Class members may be notified of the pendency of this action by published and/or mailed notice.

92.     Existence and Predominance of Common Questions of Law and Fact.  *Fed. R. Civ. P. 23(a)(2)*.  Common questions of law and fact exist as to all Class and Sub-Class members.  These questions predominate over the questions affecting only individual members. These common legal and factual questions include, among other things:

(a)     Whether the calls made by or on behalf of Defendant to the cellular phone numbers of the Class and Sub-Class members were made using an Autodialer?

(b)     Whether the calls made by or on behalf of Defendant to the cellular phone numbers of the Class and Sub-Class members were made for emergency purposes?

(c)     Whether the Class and Sub-Class members provided prior express consent to Defendant to make or have made on its behalf each of the calls to their cellular phone numbers using an Autodialer?

(d)     Whether Defendant's conduct violated 47 U.S.C. § 227(b)(1)(A)(iii)?

16

(e)      Whether Defendant willfully or knowingly violated 47 U.S.C. §

227(b)(1)(A)(iii)?

(f)      Whether Plaintiff and the Class and Sub-Class members are entitled to a

permanent injunction enjoining Defendant from making or having made on its behalf calls to

cellular phone numbers using an Autodialer without the prior express consent of the called party?

93.      Typicality.  *Fed. R. Civ. P. 23(a)(3).*  Plaintiff's claims are typical of the claims of

each Class and Sub-Class member.  Plaintiff would only seek individual or actual damages if

class certification is denied.  In addition, Plaintiff is entitled to relief under the same causes of

action and upon the same facts as the other members of the Class and Sub-Class.

94.      Adequacy.  *Fed. R. Civ. P. 23(a)(4).*  Plaintiff is an adequate representative of the

Class and Sub-Class because her interests coincide with, and are not antagonistic to, the interest

of the members of the Class and Sub-Classes she seeks to represent; she has retained counsel

competent and experienced in such litigation; and she intends to prosecute this action vigorously.

Plaintiff and her Counsel will fairly and adequately protect the interests of members of the Class

and Sub-Class.

95.      Superiority.  *Fed. R. Civ. P. 23(b)(3)*  Questions of law and fact common to the

Class and Sub-Class members predominate over questions affecting only individual members,

and a class action is superior to other available methods for fair and efficient adjudication of the

controversy.  Liability will be determined based on a common set of facts and legal theories.

Willfulness will be determined based on Defendant's conduct and knowledge, not upon the

effect of Defendant's conduct on the Class and Sub-Class members.  The statutory damages

sought by each member are such that individual prosecution would prove burdensome and

expensive given the complex and extensive litigation necessitated by Defendant's conduct.  It would be virtually impossible for the members of the Class and Sub-Classes individually to redress effectively the wrongs done to them, as the TCPA has no attorney's fee shifting provision.  Even if the members of the Class and Sub-Class themselves could afford such individual litigation, it would be an unnecessary burden on the courts.  Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues raised by Defendant's conduct.  By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in just one case.

96.     Class certification is appropriate because Defendant has acted on grounds generally applicable to the Class and Sub-Class, making appropriate equitable injunctive relief with respect to Plaintiff and the Class and Sub-Class members.  *Fed. R. Civ. P. 23(b)(2)*.

97.     By virtue of the foregoing, Defendant violated 47 U.S.C. § 227(b)(1)(A)(iii) as to Plaintiff and the members of the Class and Sub-Class by calling, on one or more occasions, their cellular telephone numbers using an Autodialer without their prior express consent, or alternatively by making such calls after any prior express consent was revoked.

98.     Pursuant to 47 U.S.C. § 227(b)(3), Plaintiff and each Class and Sub-Class member is entitled to recover from Defendant $500.00 in statutory damages for each such violation.  In the event that Defendant is found to have knowingly or willfully violated the

TCPA, this Court may, in its discretion, increase the amount of statutory damages to not more than $1,500.00 for each such violation.

99.     Pursuant to 47 U.S.C. § 227(b)(3)(A), Plaintiff, on behalf of himself and the Class and Sub-Class members, also seeks injunctive relief prohibiting Defendant's violations of the TCPA in the future.

## VI.  DEMAND FOR PRESERVATION

100.     Plaintiff also specifically demands that Defendant retain and preserve all records related to the allegations in this Complaint.  Specifically, Plaintiff's demand for preservation includes, but is not limited to, the following documents and information:

(a)     All documents evidencing all phone numbers, including spoofed numbers, used by Defendant and/or persons acting as its agent or on its its behalf in making autodialed calls to cellular phone numbers within the last four years;

(b)     All documents evidencing the cellular telephone numbers to which Defendant and/or persons acting as its agent or on its behalf made one or more autodialed calls within the four years preceding the filing of the Class Complaint or thereafter;

(c)     All documents evidencing the identity of the "called party" to whom Defendant and/or persons acting as its agent or on its behalf made one or more autodialed calls to a cellular telephone number within the four years preceding the filing of the Class Complaint or thereafter;

(d)     All documents evidencing the identity of all persons to whom Defendant and/or persons acting as its agent on its behalf made one or more autodialed calls to a cellular telephone number where the names and/or telephone numbers of the called party were obtained

by Defendant and/or persons acting as its agent or on its behalf from the names of relatives, neighbors, acquaintances or other persons in a borrower's student loan application or documentation or from a skip trace service;

(e)     All documents evidencing the number of autodialed calls made to each cellular telephone number to which Defendant and/or persons acting on its behalf made autodialed calls within the four years preceding the filing of the Class Complaint or thereafter;

(f)     All documents, including transmission or phone logs, showing dates of all autodialed calls made to a cellular phone number, and the identity of all persons called by Defendant and/or persons acting as its agent or on its behalf, using an Autodialer within the four years preceding the filing of the Class Complaint or thereafter;

(g)     All documents evidencing the scripts and/or content of all autodialed calls made by Defendant and/or persons acting as its agent or on its behalf to any cellular telephone number, within the four years preceding the filing of the Class Complaint or thereafter;

(h)     All documents supporting the contention of Defendant, if it so contends, that it had the prior express consent of any called party to whom an autodialed call was made within the four years preceding the filing of the Class Complaint or thereafter and all documents evidencing the names, addresses and cellular telephone numbers of all persons who Defendant contends provided such prior express consent;

(i)     All documents evidencing the identity and/or cellular telephone numbers of all persons who requested that Defendant and/or persons acting as its agent or on its behalf stop making calls to their cellular phone number within the four years preceding the filing of the Class Complaint or thereafter;

20

(j)      All recordings, transcripts and/or summaries or other documentation of all autodialed calls made by Defendant and/or persons acting as its agent or on its behalf to any cellular phone numbers each within the last four years.

(k)      All documents, including but not limited to invoices, transmission logs, and summary logs, provided to Defendant by any company or person which it retained to make autodialed calls on its behalf within the four years preceding the filing of the Class Complaint or thereafter;

(l)      All written, recorded, electronic or other documentation evidencing the revocation and/or attempted revocation by any called party of any prior express consent that his or her cellular phone number be called using an Autodialer.

(m)      All documents evidencing or pertaining to any and all policies or procedures implemented by Defendant with regard to the making of autodialed calls to cellular telephone numbers using an Autodialer;

(n)      All documents evidencing or pertaining to the knowledge of Defendant of the TCPA and/or the regulations and rulings of the FCC thereunder;

(o)      All documents evidencing or pertaining to any and all lawsuits and/or settlements to which Defendant was a party which, in whole or in part, pertain to the TCPA;

101.   Demand is made on Defendant to notify any third parties or vendors retained by Defendant to make autodialed calls to cellular phone numbers of this preservation demand and request production of any documents included within this demand.

21

### Incorporation of Paragraphs into other Paragraphs

102.    Every paragraph in this Complaint is hereby incorporated into every other paragraph.

## VII.  PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and as representative of all other persons similarly situated, prays for judgment against Defendant, awarding relief as follows:

a.    Certifying the proposed Class and Sub-Class under Rule 23 of the Federal Rules of Civil Procedure and appointing Plaintiff and her counsel to represent the Class and Sub-Class.

b.    Awarding to the Class and Sub-Class statutory damages as provided for under 47 U.S.C. § 227(b)(3), trebled as may be appropriate;

c.    Granting as to the Class and Sub-Class a permanent injunction restraining Defendant from making or having made on its behalf any additional non emergency calls to cellular phones using an automatic telephone dialing system without first obtaining the prior express consent of the called party;

d.    Pre-judgment interest from the date of filing this suit;

e.    A reasonable attorney's fee to be paid out of any common fund created by virtue of this litigation;

f.    All cost of this proceeding; and

g.    All general, special and equitable relief to which Plaintiff and the members of the Class and Sub-Class are entitled by law.

TRIAL BY JURY IS DEMANDED.

**DENISE BAKER**

Date: October 16, 2017                    By:    /s/ William L. Downing
                                                        Of Counsel

William L. Downing, Esq., VSB 17704
Attorney for Plaintiff
CONSUMER LEGAL SOLUTIONS, PC
1071 Bay Breeze Drive
Suffolk, VA  23435
Tel. 757-942-2554
Email: wdowninglaw@aol.com.com

Henry A. Turner (*pro hac vice* application pending)
Attorney for Plaintiff
TURNER LAW OFFICES, LLC
403 W. Ponce de Leon Ave., Suite 207
Decatur, GA 30030
Tel.  404-378-6274
Fax. 404- 377-4776
Email: hturner@tloffices.com